51IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISON

| | |
|---|---|
| ANGELITA FLOYD, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) Case No.: |
| v. | ) ) |
| STRYKER CORPORATION, | ) **JURY TRIAL DEMANDED** ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff ANGELITA FLOYD ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, brings this action for damages and other legal and equitable relief from Defendant STRYKER CORPORATION ("Defendant"), for violations of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.*, and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1. This is a collective action brought by Plaintiff challenging acts committed by Defendant against Plaintiff and those similarly situated, which amount to violations of federal wage and hour laws.

2. Defendant employed Plaintiff and all those similarly situated as Customer Service Representatives (collectively with Plaintiff, the "CSRs") in Flower Mound, Texas. Defendant, however, required the CSRs to work "off-the-clock" whereby they performed integral work before and/or after their scheduled shift and while "clocked out" without any compensation, including overtime pay, in violation of the FLSA.

3. Accordingly, Plaintiff brings this action, pursuant to 29 U.S.C. § 216(b), on behalf of a collective group of persons employed by Defendant as Customer Services Representatives within Flower Mound, Texas during the past three years through the final date of the disposition of this action who were subject to Defendant's unlawful off-the-clock policies whereby they were required to work before and/or after their scheduled shift in addition to their regular 40 hour workweek without overtime pay at one and a half times their hourly rate for all hours worked over 40 per week in violation of the FLSA and are entitled to recover: (i) unpaid overtime wages; (ii) liquidated damages; (iii) interest; (iv) attorney fees and costs; and (v) such other and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under the Declaratory Judgment Statute, 28 U.S.C. § 2201, and under 29 U.S.C. §§ 201 *et seq*.

5. Venue is proper in this Court pursuant to 29 U.S.C. §§ 201-219, in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendant maintains offices, conducts business, and resides in this district.

## THE PARTIES

6. Plaintiff is a citizen of Texas and resides in Lewisville, Texas.

7. At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of the FLSA.

8. Defendant is a corporation, which is incorporated in Michigan and registered to do business in Texas.

9. Defendant transacted and continues to transact business within Texas and this judicial district by formerly and currently employing the CSRs within Flower Mound, Texas, operating facilities within Flower Mound, Texas, and by providing services to the citizens of Texas.

10. Defendant has at all relevant times been an "employer" covered by the FLSA.

11. Upon information and belief, the amount of qualifying annual volume of business for Defendant exceeds $500,000.00 and thus subjects Defendant to the FLSA's overtime requirements.

12. Upon information and belief, Defendant is engaged in interstate commerce. This independently subjects Defendant to the overtime requirements of the FLSA.

## STATEMENT OF FACTS

### I. General Facts

13. Defendant is a medical technology company that provides medical equipment to medical providers.

14. Defendant employed the CSRs to provide customer service to its customers such as responding to customer complaints and processing orders.

15. In or around September 2019, Plaintiff began working for Defendant as a CSR at its Flower Mound, Texas customer service facility (the "Facility").

16. Defendant paid the CSRs, including Plaintiff, on an hourly basis.

17. Prior to March 2020, the CSRs worked within the Facility.

18. The CSRs were grouped in teams of 10 to 12 and there were about five to six teams.

19. The CSRs received work assignments by Defendant primarily via a shared email account with their Supervisors. When the CSR completed a particular assignment, the CSR moved the assignment to a "completed" folder.

20. Assignments included, among other things, responding to customer inquiries, resolving issues, and fulfilling orders.

21. The CSRs' work assignments had strict deadlines.

22. If CSRs did not timely complete their assignments, they were subject to discipline and in fact, were disciplined. The discipline included verbal warnings, written warnings, placement on performance improvement plans, and termination.

23. Usually, the assignment deadlines were as little as a few hours or up to three days. Rarely were assignment deadlines longer than three days.

24. Prior to March 2020, the CSRs were usually only given about one client account each.

**II.     March 2020, Until In Or Around September 2020**

25. After March 2020, as a result of the COVID-19 pandemic, the CSRs began working from their homes.

26. Also after March 2020, Defendant added approximately 15 to 20 accounts to each CSR's workload, which represents an approximately 150% to 200% increase.

27. As a result of the dramatic increase in accounts, the number of time-sensitive assignments the CSRs were given also dramatically increased.

28. Pursuant to Defendant's policies, the CSRs, however, were not given any additional time to complete the increased number of assignments during the first three weeks of the month.

The CSRs were only permitted to work a select and insufficient number of overtime hours (about five hours) during the last week of the month.

29.     Almost all of the CSRs' assignments, however, had deadlines shorter than one month (*e.g.*, a few hours to three days). Thus, they were required to work off-the-clock before and/or after their shift to timely complete their assignments to avoid being disciplined.

30.     Typically, the CSRs worked five to 10 hours off-the-clock per week (other than in the last week of the month).

31.     As a result of working off-the-clock, the CSRs, including Plaintiff, worked in excess of 40 hours per week.

32.     The CSRs, including Plaintiff, however, were not paid anything, including overtime pay, for the time they spent working before their shift and/or after they clocked out.

33.     Even though the CSRs were allowed to work overtime during the last week of the month, they were not allotted the necessary amount of hours to complete their assignments. For example, Plaintiff was only allotted five hours of overtime for the last week of the month despite her requiring and performing 10 hours of overtime per week to complete her assignments. Notably, Defendant did not compensate Plaintiff anything for the five additional hours of overtime work she performed at the end of the month.

34.     By consequence, the CSRs worked uncompensated overtime hours each week of the month, including the last week where some overtime hours were afforded.

35.     Defendant was aware that the CSRs were working off-the-clock because CSRs complained to Richard Francis ("Mr. Francis"), the Director of Customer Relations, about the uncompensated off-the-clock work at the Facility's monthly update meetings that all CSRs attended.

36. Defendant also had knowledge of the off-the-clock work because the CSRs' immediate Supervisors monitored the shared email drive on a daily basis. They also observed uncompleted assignments at the end of CSR's shift and that some or all assignments were completed before the CSR's shift began the following day.

37. Defendant further had knowledge of the off-the-clock work because completed work was timestamped and because Defendant's computer system tracked and displayed who was logged in to complete their assignments. For example, the usage sheets (documents used to bill Defendant's customers) that the CSRs uploaded to Defendant's systems and the email they sent were time-stamped.

38. Accordingly, from March 2020, to in or around September 2020, Defendant denied the CSRs their overtime pay of one and a half times their hourly rate for all hours worked in excess of 40 per workweek in willful violation of the FLSA.

### III. In Or Around September 2020, To Present

39. Around September 2020, in response to the repeated complaints of unpaid off-the-clock-work, Defendant occasionally began permitting certain teams to work overtime at its discretion.

40. Defendant would email the specific teams at the beginning of the workweek to inform them that they could work overtime hours for that workweek.

41. CSRs, however, were still not permitted to work overtime every single week, which was necessary in order for them to timely complete their assignments. The permitted non-end of month overtime was occasional and at Defendant's discretion.

42. As with the end of the month overtime, this allotted overtime was still insufficient to cover all the actual time needed for the CSRs to complete their daily assignments and avoid discipline.

43. For example, Plaintiff was only allotted five hours of overtime when her team was allowed to work non month's end overtime despite her requiring and performing 10 hours of overtime that week in order to timely complete her assignments. Notably, Defendant did not compensate Plaintiff anything for the five additional hours of overtime work she performed, including the statutorily required overtime pay.

44. Thus, although CSRs were now getting paid for some overtime prior to the last week of the month, they still were not getting paid all earned and due overtime.

45. Plaintiff complained to her Supervisor, Fernando Serrano ("Mr. Serrano"), that this occasional non month's end allotted overtime was insufficient for her to timely complete her assignments. Mr. Serrano told Plaintiff that he would inform Mr. Francis of her complaint, but no remedial action was taken.

46. CSRs continued to complain to Mr. Francis about the uncompensated off-the-clock work during the monthly update meetings despite the new week-by-week overtime policy.

47. Defendant had knowledge of the uncompensated off-the-clock work in the same manner that they had knowledge of it during the March 2020, to September 2020, time period.

48. On March 25, 2022, Plaintiff's employment with Defendant ended.

49. Accordingly, from in or around September 2020 to present, Defendant denied the CSRs their overtime pay of one and a half times their hourly rate for all hours worked in excess of 40 per workweek in willful violation of the FLSA.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

50. Plaintiff seeks to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on her own behalf as well as those in the following collective:

> All persons employed by Defendant as Customer Service Representatives within Flower Mound, Texas during the relevant time period, who were subject to Defendant's unlawful off-the-clock policies whereby they were required to work after their scheduled shift in addition to their regular 40 hour workweek schedule without overtime pay at one and a half times their hourly rate for all hours worked in excess of 40 per workweek.

51. At all relevant times, Plaintiff was similarly situated to all such individuals in the FLSA Collective[1] because while employed by Defendant, Plaintiff and all FLSA Plaintiffs performed similar tasks, were subject to the same laws and regulations, were paid in the same or substantially similar manner, were paid the same or similar rate, were required to work in excess of 40 hours per workweek, and were subject to Defendant's unlawful uniform off-the-clock policies of willfully failing to pay them at the statutorily required rate of one and a half times their hourly rate for all hours worked in excess of 40 per workweek.

52. Defendant is and has been aware of the requirement to pay Plaintiff and the FLSA Plaintiffs at a rate of one and a half times their hourly rate for all hours worked in excess of 40 per workweek, yet willfully failed to do so.

53. The FLSA Plaintiffs, under Plaintiff's FLSA claim, are readily discernable and ascertainable. All FLSA Plaintiffs' contact information is readily available in Defendant's records. Notice of this collective action can be made as soon as the Court preliminarily certifies the FLSA Collective.

---

[1] Hereinafter referred to as the "FLSA Plaintiffs."

8

54. All questions relating to Defendant's violations of the FLSA share the common factual basis with Plaintiff. No claims under the FLSA relating to the failure to pay statutorily required overtime premiums are specific to Plaintiff and the claims asserted by Plaintiff are typical of those of members of the FLSA Collective.

55. Plaintiff will fairly and adequately represent the interests of the FLSA Collective and have no interests conflicting with the FLSA Collective.

56. A collective action is superior to all other methods of claim adjudication and is necessary in order to fairly and completely litigate violations of the FLSA.

57. Plaintiff's attorneys are familiar and experienced with collective and class action litigation, as well as employment and labor law litigation.

58. The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual FLSA Plaintiffs also creates a risk for varying results based on identical fact patterns as well as disposition of the FLSA Collective's interests without their knowledge or contribution.

59. The questions of law and fact are nearly identical for all FLSA Plaintiffs and therefore proceeding as a collective action is ideal. Without judicial resolution of the claims asserted on behalf of the FLSA Collective, Defendant's continued violations of the FLSA will undoubtedly continue.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
### The Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*
### Made by Plaintiff on Behalf of All FLSA Plaintiffs

60. Plaintiff and the FLSA Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

61. From March 2020 to present, Plaintiff and the FLSA Plaintiffs were required to complete their assignments in a timely manner.

62. From March 2020 to present, Plaintiff and the FLSA Plaintiffs could not complete their assignments in a timely manner within a 40-hour workweek.

63. Thus, Plaintiff and the FLSA Plaintiffs worked off-the-clock in order to timely complete their assignments and be in compliance with Defendant's policies and procedures.

64. Defendant did not compensate Plaintiff and the FLSA Plaintiffs the overtime rate of one and a half times their hourly rate of all hours worked in excess of 40 hours per week.

65. Defendant knowingly failed to pay Plaintiff and the FLSA Plaintiffs for all hours worked and failed to pay Plaintiff and the FLSA Plaintiffs the statutorily required overtime rate for all hours worked in excess of 40 per workweek.

66. Defendant's conduct was willful and lasted for the duration of the relevant time periods.

67. Defendant's conduct was in violation of the Fair Labor Standards Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the FLSA Plaintiffs employed by Defendant, demands judgment against Defendant as follows:

A. At the earliest possible time, Plaintiff should be allowed to give notice of this collective action, or the Court should issue such notice, to all members of the FLSA Collective, defined herein. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper overtime wages;

B. Designation of Plaintiff as representative of the FLSA Collective defined herein;

C. Certification of this action as a collective action pursuant to 29 U.S.C. § 216(b) for the purposes of the claims brought on behalf of all proposed FLSA Collective members under the FLSA;

D. Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

E. A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*;

F. Awarding all damages which Plaintiff and FLSA Plaintiffs have sustained as a result of Defendant's conduct, including back pay for unpaid overtime wages and liquidated damages;

G. Awarding Plaintiff and FLSA Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

I. Awarding Plaintiff and FLSA Plaintiffs of pre-judgment interest at the highest legal rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

J. Awarding post-judgment interest, as provided by law;

K. Awarding Plaintiff and FLSA Plaintiffs representing Defendant's share of FICA, FUTA, state unemployment insurance and any other required employment taxes; and

L. Granting Plaintiff and FLSA Plaintiffs other and further relief as this Court finds necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated:  May 23, 2022
        Dallas, Texas

Respectfully Submitted,

Alexander M. White
Texas Bar No.: 24126840
awhite@vkvlawyers.com
**Valli Kane & Vagnini LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
T: (516) 203-7180

**ATTORNEYS FOR PLAINTIFFS**